Eric S. and Mary K. BROWN, Appellants,

v.

DIRECTOR OF REVENUE, Respondent.

Jeffrey C. and Nancy J. Brown, Appellants,

v.

Director of Revenue, Respondent.

Nos. SC 81799, SC 81800.

Supreme Court of Missouri, En Banc.

March 7, 2000.

Victoria Schroeder, Kevin L. Petracek, Kansas City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

DUANE BENTON, Judge.

Eric S. and Mary K. Brown, and Jeffrey C. and Nancy J. Brown — all Kansas residents — petition for review of Administrative Hearing Commission decisions upholding liability for Missouri income tax (plus interest) for 1995. *Sec. 621.189 RSMo 1994* [1]; *Mo. Const, art. V, sec. 3.* Affirmed.

### I.

Before January 3, 1995, Eric and Jeffrey Brown were officers, shareholders and employees of Carl I. Brown and Company. This Kansas corporation kept its principal office in Kansas City, Missouri, three others elsewhere in Missouri, and a total of 47 offices in 16 other states (but none in Kansas). On January 3, 1995, the corporation was acquired, as a wholly-owned sub-

sidiary, by First Tennessee Bank National Association.

Earlier, on September 6, 1994, the Browns each executed an Employment Agreement with the corporation, agreeing to continue for two years after the acquisition as Vice–President of Retail Lending, and as Vice–President of Wholesale and "B" Paper Lending, respectively. By the Agreement, the corporation paid each Brown the following "Compensation":

a. $660,000 in consideration of "Covenants Against Competition," payable upon consummation of the acquisition

b. $360,000 as annual salary (also identified in the Agreement as "compensation")

c. standard employee benefits

d. reimbursement for reasonable business expenses

e. regular vacation, holiday, and sick leave.

Two pages within the 19–page Employment Agreement delineate the "Covenants Against Competition." The Browns agree, for at least four years after the acquisition, not to compete with the corporation within 50 miles of any location where the corporation originates, services, or deals in residential mortgages or its other services.

After the 1995 acquisition, the Browns were employed full-time by the corporation, working primarily from the Kansas City office, although their positions required travel throughout the United States on corporate business. The corporation paid each the lump-sum $660,000, in addition to their annual salary. The Browns reported the total of both payments on their 1995 federal tax returns as ordinary income, "wages, salaries, tips, etc."

The Browns filed 1995 Missouri income tax returns, stating that income from the Covenants was the intangible income of a Kansas resident, excluded from Missouri taxable income. The Director disagreed, assessing $38,129 in tax as to Eric and

[1]. All citations are to RSMo 1994.

Mary Brown, and $38,546 as to Jeffrey and Nancy Brown, plus interest. The AHC affirmed the Director.

The Browns also filed amended 1995 Kansas income tax returns, claiming credits for the taxes "deemed" owed to Missouri. See *Kan. Stat. Ann. section 79-32,111(a):*

> The amount of income tax paid to another state by a resident individual...on income derived from sources in another state shall be allowed as a credit against the tax computed under the provisions of this act.

The Kansas Department of Revenue denied the credits. The Browns appealed those decisions, which still pend.

## II.

■ Missouri may tax nonresidents on income "derived from" a business, trade or profession carried on in this state, or from property owned within this state. *Shaffer v. Carter,* 252 U.S. 37, 57, 40 S.Ct. 221, 227, 64 L.Ed. 445, 458 (1920).

The General Assembly accordingly enacted section 143.041: "A tax is hereby imposed for every taxable year on the income of every nonresident individual which is derived from sources within this state." Such income includes the income "attributable to...a business, trade, profession, or occupation carried on in this state." *Sec. 143.181.2(2).*

Compensation for employment at a Missouri office certainly is income attributable to a business, trade, profession, or occupation carried on in this state. The Browns' Employment Agreements identify as "Compensation" not only the salaries, but also the lump-sum payments. The Agreements recite the "terms and conditions" of employment in this state, and are governed by and construed in accordance with the laws of Missouri. Most importantly, the lump-sum payments are consideration "for entering into this Agreement."

■ The Browns characterize the Covenants Against Competition as intangible personal property. They then invoke section 143.181.3:

> Income from intangible personal property ... shall constitute income derived from sources within this state only to the extent that such income is from property employed in a business, trade, profession, or occupation carried on in this state.

The lump-sum payments, the Browns assert, are not from employment "carried on "in Missouri, but from *not* carrying on employment in Missouri. See *Ohio Farm Bureau Federation v. Commissioner,* 106 T.C. 222, 234, 1996 WL 167955 (1996); *Hornaday v. Commissioner,* 81 T.C. 830, 838, 1983 WL 14895 (1983); *Barrett v. Commissioner,* 58 T.C. 284, 289, 1972 WL 2450 (1972); *Steffens v. Commissioner,* 707 F.2d 478, 482 (11th Cir.1983); *Milligan v. Commissioner,* 38 F.3d 1094, 1097–98 (9th Cir.1994). The Browns thus conclude that the lump-sum payments are not subject to Missouri income taxation.

The Browns take the lump-sum payments out of context. The lump sum payments are part of the Browns' total compensation for their employment in Missouri. The Covenants are an integral part of the Employment Agreements that bind the Browns to two years' employment. The lump-sum payments are intertwined with the salaries; but for the Covenants, the Browns would not be employed.[2]

The decisions of the Administrative Hearing Commission are authorized by law and supported by competent and sub-

---

**2.** This case does not pose the issue whether Missouri can tax a nonresident's income derived solely from non-compete agreements not to work here. Further, the Browns do not argue, nor did they present evidence, that they carried on their business, trade, profession or occupation partly within and partly without this State. See *sections 143.181.5; 621.050.2.*

stantial evidence upon the whole record. *Sec. 621.193.* The decisions are affirmed.

All concur.